**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**EDWARD NELLSON,**

               Plaintiff,

        v.                                  **CIVIL ACTION NO. 5:20-CV-112**
                                              Judge Bailey

**JOHN DOE,** Warden of USP Hazelton,
**JOHN DOE,** Lt at USP Hazelton,
**GREGORY MIMS,** and
**LEIGH BIRD,**

               Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Presently pending before this Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint Or, in the Alternative, Motion for Summary Judgment [Doc. 71], filed October 6, 2020. Therein, defendants request this Court to dismiss the pending Amended Complaint in full or, alternatively, grant summary judgment in favor of the defendants. *See* [Doc. 71 at 1]. A Response [Doc. 90] was filed on November 11, 2020. Defendants filed a Reply [Doc. 94] on November 23, 2020. Having been fully briefed, this matter is now ripe for decision. For the reasons that follow, this Court will grant Defendants' Motion to Dismiss Plaintiff's Amended Complaint Or, in the Alternative, Motion for Summary Judgment.

## LEGAL STANDARD

"A responsive pleading captioned as a motion to dismiss or, in the alternative, as a motion for summary judgment puts all parties on notice that a court could construe the

1

motion either way." *Newsome v. Williams*, 2016 WL 11431790, at *2 (N.D. W.Va. May 26, 2016) (Trumble, MJ), *report and recommendation adopted in* *Newsome v. Williams*, 2016 WL 4153615 (N.D. W.Va. Aug. 5, 2016) (Groh, CJ) (quoting *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998)).

A motion to dismiss filed under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face*." Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing a motion to dismiss, a court may consider public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." *Katyle v. Penn National Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011). This includes documents filed in prior court proceedings. *See* *Walker v. Kelly*, 589 F.3d127 (4th Cir. 2009).

Federal Rule of Civil Procedure 12 states that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Newsome v. Williams*, 2016 WL 11431790, *supra*, (quoting Fed. R. Civ. P. 12(d)). The Court may consider documents attached to the complaint, as well as those attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." *Id. (*quoting *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

Rule 56(e) of the Federal Rules of Civil Procedure provides that "an opposing party

may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule– set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

Rule 56 further provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." ***Anderson***, 477 U.S. at 249 (citations omitted).

## FACTUAL BACKGROUND

### A.    Conviction and Sentence

On January 14, 2005, the plaintiff was sentenced in the District of Columbia Superior Court to serve a life sentence for "conspiracy to commit robbery, first degree burglary while armed, armed robbery, murder I while armed, and carrying a dangerous weapon." *See* [Doc. 72-1 at 3].  For purposes of this case, plaintiff was designated to FCC Hazelton in Bruceton Mills, West Virginia, from December 12, 2016, to November 13, 2017.  *See* [Id.].  For a portion of his allegations in his Amended Complaint, the plaintiff was housed in the Special Housing Unit ("SHU") at FCC Hazelton.  *See* [Id.].  Currently, the plaintiff is housed at the United States Penitentiary ("USP") in Florence, Colorado.

### B.    Procedural History

On March 22, 2020, the plaintiff brought the initial Complaint in the United States District Court for the District of Columbia [Doc. 1] pursuant to ***Bivens v. Six Unknown Federal Narcotics Agents***, 403 U.S. 388 (1971).  The initial Complaint was then transferred to the United States District Court for the Eastern District of Kentucky [Doc. 34] on May 7, 2020.  The plaintiff filed a Motion to Sever and Transfer Venue [Doc. 38] on June 5, 2020, and thereafter the claims asserted in the initial Complaint against defendants "Warden John Doe of USP Hazelton," "SHU Lt. John Doe at USP Hazelton," "Gregory Mims," and "Leigh Bird" were severed and transferred to this Court.  *See* [Doc. 43].  After

the defendants filed their first Motion to Dismiss Or, in the Alternative, Motion for Summary Judgment [Doc. 50], the plaintiff filed an Amended Complaint [Doc. 61].

In the Amended Complaint, the plaintiff asserts five causes of action. First, the plaintiff asserts a **Bivens** violation of the Eighth Amendment against all defendants in their individual capacity. *See* [Doc. 61 at 29]. Second, the plaintiff asserts a **Bivens** supervisory capacity claim against defendants Gregory Mims, Warden John Doe of USP Hazelton, and SHU Lt. John Doe at USP Hazelton in their individual capacity. *See* [Id. at 29–30]. Third, the plaintiff alleges medical malpractice/negligence against Gregory Mims and Leigh Bird. *See* [Id. at 30–31]. Fourth, the plaintiff alleges medical malpractice/gross negligence against Gregory Mims and Leigh Bird. *See* [Id. at 31–32]. Fifth, the plaintiff asserts a medical malpractice/willful and wanton claim against Gregory Mims and Leigh Bird. *See* [Id. at 32–33]. The plaintiff is requesting "no less than $100,000,000 in actual damages," special damages, attorney's fees and costs, and punitive damages. *See* [Id. at 33–34].

On October 6, 2020, the Defendants' Motion to Dismiss Plaintiff's Amended Complaint Or, in the Alternative, Motion for Summary Judgment was filed. [Doc. 71]. A Response [Doc. 90] was filed on November 11, 2020. On November 23, 2020, a Reply [Doc. 94] was filed.

i.    **Defendants' Motion to Dismiss Plaintiff's Amended Complaint Or, in the Alternative, Motion for Summary Judgment [Doc. 71] and Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, Motion for Summary Judgment [Doc. 72].**

In their Motion, the defendants make six arguments in support of the Motion to Dismiss Plaintiff's Amended Complaint Or, in the Alternative, Motion for Summary Judgment. *See* [Doc. 72]. First, the defendants argue that the plaintiff's claims against Warden John Doe of USP Hazelton and SHU Lt. John Doe at USP Hazelton should be dismissed because of the lack of requisite personal involvement. *See* [Id. at 11–13]. Second, the defendants argue that the plaintiff's claims must fail because the plaintiff cannot show the individual defendants acted with deliberate indifference as is required to sustain a ***Bivens*** claim under the Eighth Amendment. *See* [Id. at 13–17]. Third, the defendants assert that the plaintiff's claims for medical malpractice and medical negligence fail because such allegations are not actionable in a lawsuit pursuant to ***Bivens***. *See* [Id. at 17–18]. Fourth, the defendants argue that they are entitled to qualified immunity because they did not commit any constitutional violations. *See* [Id. at 18–19]. Fifth, the defendants assert that public health service employees are immune from personal liability in a ***Bivens*** action. *See* [Id. at 19–20]. Lastly, the defendants argue that this Court does not have subject matter jurisdiction over the plaintiff's injunctive relief claims. *See* [Id. at 21–22].[1]

---

[1] In plaintiff's response, he states that he is not seeking injunctive relief against the defendants in this case. He states that "[t]hat portion of [his] claim is now properly before the Kentucky Federal Court. Therefore, this Court will not further address this argument.

ii.     **Plaintiff's Response to Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [Doc. 90]**

In response, the plaintiff makes six arguments in arguing that the defendants are not entitled to the relief requested.  *See* [Doc. 90].  First, the plaintiff argues that he has "properly brought supervisory liability ***Bivens*** claims against defendants Warden Joseph Coakley and SHU Lieutenant James Soule."  *See* [Id. at 5–7].  Second, the plaintiff asserts that defendants showed deliberate indifference to him.  *See* [Id. at 7–14].  Third, the plaintiff argues that his medical malpractice claims are viable under the FTCA.  *See* [Id. at 14–15].  Fourth, the plaintiff argues that he did comply with the pre-filing requirements under West Virginia law.  *See* [Id. at 15–16].  Fifth, the plaintiff asserts that the defendants are not entitled to summary judgment on the basis of qualified immunity.  *See* [Id. at 16–21].  Sixth, the plaintiff argues that his medical malpractice claims against defendants Mims and Bird are allowable under the FTCA.  *See* [Id. at 21].

iii.    **Defendants' Reply Brief in Support of Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment [Doc. 94]**

The defendants, in reply, make three arguments.  *See* [Doc. 94].  First, the defendants argue that the plaintiff has failed to bring a cause of action against the United States of America under the FTCA.  *See* [Id. at 1–4].  Second, the defendants assert that the plaintiff's claim against defendants Mims and Bird are barred by W.Va. Code § 55-7B-6 of the West Virginia Medical Professional Liability Act.  *See* [Id. at 4–6].  Third, the defendants argues that "plaintiff's mere assertions should not be taken as true."  *See* [Id. at 6–7].

## DISCUSSION

I.    **Counts I and II**

In ***Farmer v. Brennan***, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"   The Supreme Court emphasized "[p]rison conditions may be 'restrictive and even harsh.'"   ***Id***. at 833.

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs.   ***Estelle v. Gamble***, 429 U.S. 97, 104 (1976).   To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind."   ***Wilson v. Seiter***, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention.   ***Gaudreault v. Municipality of Salem, Mass.***, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991).   A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss.   ***Monmouth County Corr. Inst. Inmates v. Lanzaro***, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. *Wilson*, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. *Farmer v. Brennan*, 511 U.S. at 835. A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." *Id*. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care, and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable to the inmate." *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain,

discomfort or a threat to good health." *See **Morales Feliciano v. Calderon Serra***, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing ***Brock v. Wright***, 315 F.3d 158, 162 (2d Cir. 2003)).

> **A.     Defendants Warden Joseph Coakley, identified as "Warden John Doe of USP Hazelton," and SHU Lieutenant James Soule, identified as "SHU Lt. John Doe at USP Hazelton" are hereby dismissed.**

Liability in a ***Bivens*** action is "personal, based upon each defendant's own constitutional violations." ***Trulock v. Freeh***, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, in order to establish liability in a ***Bivens*** case, a plaintiff must specify the acts taken by the defendant which violate his constitutional rights. *See **Wright v. Smith***, 21 F.3d 496, 501 (2d Cir. 1994); ***Colburn v. Upper Darby Township***, 838 F.2d 663 (3d Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. *See **Zeitler v. Wainwright***, 802 F.2d 391, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a ***Bivens*** case. ***Rizzo v. Good***, 423 U.S. 362 (1976).

As a preliminary matter, the Fourth Circuit has held that non-medical supervisory personnel, like a warden, may rely on the opinion of the medical staff regarding the proper medical treatment of inmates. *See **Miltier***, 896 F.2d at 855. Accordingly, here, defendants Warden Joseph Coakley, identified as "Warden John Doe of USP Hazelton," and SHU Lieutenant James Soule, identified as "SHU Lt. John Doe at USP Hazelton," did not and should not substitute their own medical judgment for that of medical professionals.

The plaintiff has made no claim that defendants Warden John Doe of USP Hazelton and SHU Lt. John Doe at USP Hazelton were involved in the violation of his constitutional

rights.  Instead, it appears that the plaintiff names defendants Warden John Doe of USP Hazelton and SHU Lt. John Doe at USP Hazelton in their official capacity as Warden and SHU Lieutenant.  However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent."  ***Kentucky v. Graham***, 473 U.S. 159, 165 (1985) (citation and quotations omitted).  Nonetheless, in ***Miltier***, 896 F.2d at 854, the Fourth Circuit recognized that supervisory defendants may be liable in a ***Bivens*** action if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations."  In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury."  ***Id***.  However, a plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs.  ***Id***.  Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice.  ***Id***.  This plaintiff has not done so.  Moreover, plaintiff concedes his claim against defendants Warden John Doe of USP Hazelton and SHU Lt. John Doe at USP Hazelton is one for Supervisory Capacity.  *See* [Doc. 61 at 29].

Accordingly, because the plaintiff fails to allege any personal involvement on the part of defendants Warden John Doe of USP Hazelton and SHU Lt. John Doe at USP

Hazelton, both parties should be dismissed from this action and summary judgment will be entered on Counts I and II.

### B.     Defendants Mims and Bird are Public Health Service employees and are hereby dismissed.

Defendants Mims and Bird each is a Commissioned Officer in the United States Public Health Service. Title 42 U.S.C. § 233(a) provides that the exclusive civil remedy available to any individual against a commissioned officer of the U.S. Public Health Service for any actions pertaining to medical, surgical, dental or related functions, is an action pursuant to the Federal Tort Claims Act (28 U.S.C. § 2672).   Section 233(a) protects commissioned officers or employees of the Public Health Service from being subject to suit while performing medical and similar functions by requiring that such lawsuits be brought against the United States instead. The United States thus in effect insures designated public health officials by standing in their place financially when they are sued for the performance of their medical duties.   *Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000).   *See also, U.S. v. Smith*, 499 U.S. 160, 170 n.11 (1990) (42 U.S.C. § 233 is one of several statutes passed to provide absolute immunity from suit for Government medical personnel for alleged malpractice committed within the scope of employment); *Carlson v. Green*, 446 U.S. 14, 20 (1980) (Congress explicitly provides in 42 U.S.C. § 233(a) that the FTCA is a plaintiff's sole remedy against Public Health Service employees); *Apple v. Jewish Hosp. and Medical Center*, 570 F. Supp. 1320 (E.D.N.Y. 1983) (motion for dismissal of the action against the defendant doctor, a member of the National Health Corps. granted and the United States substituted as defendant, and case deemed a tort action).   Therefore, pursuant to 42 U.S.C. § 233(a), defendants Mims and Bird enjoy

12

absolute immunity from personal liability for all claims arising from the medical care they provided the plaintiff, and are hereby dismissed from this action.

### C.    Deliberate Indifference to Serious Medical Needs

Here, viewing the allegations in the Amended Complaint in the light most favorable to the plaintiff, as required, it appears that he has failed to prove the objective prong necessary to prove an Eighth Amendment claim of deliberate indifference.  Moreover, the plaintiff has also failed in his burden to prove the second, subjective prong of the Eighth Amendment analysis because he cannot show that the defendants were deliberately indifferent.   Medical staff may be found to be deliberately indifferent by intentionally denying or delaying access to medical care or by intentionally interfering with a prescribed course of treatment.  *Estelle*, 429 U.S. at 104–105.  The record as a whole shows that while the plaintiff was at FCC Hazelton, he was appropriately and timely treated for all medical issues he presented. *See generally* [Doc. 72-1 and 72-2].  Upon his arrival at FCC Hazelton, the plaintiff participated in an A&O appointment where his medical history was reviewed at length.  [Doc. 72-2 at 3].  During the appointment, defendant Leigh Bird, PA-C, found no evidence that the plaintiff had previously been diagnosed with "Balance Equilibrium Disorder," as reported by the plaintiff.  [Id.].  Based on defendant Bird's review of his medical chart, she could not find any indication that he was diagnosed with "Balance Equilibrium Disorder" and she also could not find any findings to support the need of an assistive device for ambulation.  [Id. at 3–4].

Furthermore, on December 29, 2016, the plaintiff was seen at Health Services after reporting he had a seizure and hit his head.  The following day, he was seen by Health

Services for a Neurology visit where an EEG was ordered.  [Id. at 4].  Once Health Services received the EEG results and reviewed them, Health Services discussed the results with the plaintiff.  [Id. at 5; Doc. 72-1 at 21–22].  During the review session, the plaintiff reported not taking the prescribed Dilantin because he did not think he was actually having seizures.  [Id.].  The plaintiff was even seen by an outside Neurologist at the West Virginia University Department of Neurology.  [Id.].  Finally, before the plaintiff's transfer from FCC Hazelton, defendant Mims discussed the plaintiff's case and continuity of care with the Clinical Director at the receiving institution.  [Id. at 6].

To the extent that the plaintiff alleges he was denied access to a wheelchair or a walker in the SHU, defendant Mims clearly explains that "inmates are typically not permitted to keep mobility devices in their cell in the SHU, except in limited circumstances, due to safety and security concerns."  [Id. at 3].  The plaintiff has not and cannot establish that any of the defendants knew of an excessive risk to his health or safety and consciously disregarded that risk.  Again, during his A&O appointment, defendant Bird could not find any indication that the plaintiff was diagnosed or had "Balance Equilibrium Disorder" or needed an assistive device for ambulation.

The majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care, i.e. "[n]o care," rather than "bad care."  *See, e.g.*, **Holmes v. Sheahan**, 930 F.2d 1196 (7th Cir. 1991), *cert. denied*, 502 U.S. 960 (1991).  Here, even if this Court concluded that the plaintiff received "bad care," which it does not, the plaintiff did receive care.

Despite the plaintiff's attempt to characterize his claim as one of deliberate indifference, it is clear from the plaintiff's medical records that the defendants were not

14

indifferent to his needs. It appears then, that the plaintiff really takes issue with the type of treatment he received. In other words, the plaintiff merely disagrees with the prison's medical staff as to his diagnosis or course of treatment. However, such a claim is more appropriately a tort claim and, as already noted, does not rise to the level of a constitutional violation.

Accordingly, the defendants are entitled to judgment as a matter of law because the plaintiff has failed to state a claim upon which relief can be granted.

## II.   Medical Negligence: Counts III, IV and V

The plaintiff contends that defendants Gregory Mims and Leigh Bird committed negligence, gross negligence, and were willful and wanton in their care of him. *See* [Doc. 61 at 30–33].

To the extent that the plaintiff may be seeking to establish a medical negligence claim, he must comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and
>
> learning required or expected of a reasonable, prudent health care provider
>
> in the profession or class to which the health care provider belongs acting in
>
> the same or similar circumstances; and (b) such failure was a proximate
>
> cause of the injury or death.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. ***Banfi v. American Hospital for Rehabilitation***, 529 S.E.2d 600, 605–606

(2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued.  W.Va. Code § 55-7B-6.  This section provides in pertinent part:

**§55-7B-6**. Prerequisites for filing an action against a health care provider; procedures; sanctions.

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit

16

must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

W.Va. Code § 55-7B-6.

This Court previously held that compliance with W.Va. Code § 55-7B-6 is mandatory prior to filing suit in federal court. *See Stanley v. United States*, 321 F.Supp.2d 805, 806–807 (N.D. W.Va. 2004) (Keeley, J.).

With regard to the pre-suit notice requirements, by the plaintiff's own admission, he states that the initial Complaint "was filed before mailing of the notices . . . because of a rapidly approaching statute of limitations." [Doc. 90 at 15]. Therefore, the plaintiff failed to serve defendants Gregory Mims and Leigh Bird with a notice of claim or screening certificate of merit at least thirty (30) days prior to filing suit. This Court could stop the analysis here but the Court would like to further point out that plaintiff failed to comply with W.Va. Code § 55-7B-6(b), which requires the notice to "include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit." In this case, plaintiff provided no such statement to the defendants and rather just mailed a copy of the Complaint to the defendants. *See* [Doc. 90-1 & 90-2]. Therefore, summary dismissal is appropriate.

### III.     Federal Tort Claims Act Claim

Plaintiff argues that his medical malpractice claims are viable under the Federal Tort Claims Act ("FTCA").  *See* [Doc. 90 at 14–15].  This Court disagrees.

The FTCA is a limited and narrowly tailored waiver of sovereign immunity that imposes tort liability on the United States in certain circumstances for injuries caused by the negligent or wrongful acts or omissions of federal government employees. 28 U.S.C. § 1346(b).  The FTCA does not create an independent legal cause of action.  ***Medina v. United States***, 259 F.3d 220, 223 (4th Cir. 2001) (citations omitted).  Instead, the FTCA holds the United States liable where a private individual would be liable under similar circumstances for a state law tort in the relevant jurisdiction.  ***Id.***

Even where the government has waived sovereign immunity, the FTCA only authorizes lawsuits against the United States itself.  28 U.S.C. § 1346(b).  Therefore, the United States, not any individual government employee or agency, is the *only* proper defendant in an FTCA lawsuit. *See* 28 U.S.C. § 2679(a); ***Webb v. Hamidullah***, 281 F.App'x 159, 161 n.4 (4th Cir. 2008) (per curiam) (unpublished) (United States is the only proper defendant in FTCA claim); ***Holmes v. Eddy***, 341 F.2d 477, 480 (4th Cir. 1965) (per curiam) (federal agency cannot be sued pursuant to the FTCA).

FTCA liability is governed by state law.  ***Rayonier Inc. v. United States***, 352 U.S. 315 (1957);  ***Myrick v. United States***, 723 F.2d 1158 (4th Cir. 1983) (In FTCA action, federal courts apply the substantive law of the state in which the act or omission giving rise to the action occurred).

In West Virginia, a plaintiff alleging medical negligence must comply with the West

Virginia Medical Professional Liability Act ("MPLA"), W.Va. Code § 55-7B-1 *et seq*.
***Dreenen v. United States***, 2010 WL 1650032, at *2 (4th Cir. 2010); ***Callahan v. Cho***, 437
F.Supp.2d 557, 561 (E.D. Va. 2006); ***Stanley v. United States***, 321 F.Supp.2d 805,
808–09 (N.D. W.Va. 2004) (Keeley, J.).

As stated above, the plaintiff has failed to comply with the MPLA.  The plaintiff failed
to serve defendants Mims and Bird with a notice of claim or screening certificate of merit
at least thirty days prior to filing suit.  Furthermore, pursuant to the provisions of the FTCA,
the administrative process must be fully exhausted before FTCA claims may be brought
in an action in federal court.  28 U.S.C. § 2675(a).  Administrative exhaustion under the
FTCA requires an inmate to submit written notification of the incident–accompanied by a
sum certain claim monetary damages–to the federal agency responsible for the activities
giving rise to the claim.  *See* 28 C.F.R. § 14.2(a) and (b)(1).  The inmate may file an FTCA
suit in federal court only after the agency denies the inmate's claim, and must do so within
six months of the mailing of the denial.  28 C.F.R. § 14.9.  An administrative tort claim is
statutorily presumed denied if six months pass without action on a properly filed
administrative claim.  28 U.S.C. § 2675(a).

The plaintiff filed an SF-95 ("administrative tort claim") on or about August 13, 2017,
seeking $25,000,000 for an injury, denial of medical care, torture, and retaliation all related
to events at USP Sandy.  [Doc. 61-20.].  However, this administrative claim does not
address the plaintiff's claims concerning alleged negligence on the part of defendants
Mims and Bird.  Records maintained by the BOP, establish that the only SF-95 filed by the
plaintiff regarding USP Hazelton sought $5,000,000 for personal injury and property

19

damage.[2]  However, that administrative claim was denied in a letter dated March 21, 2019, and the plaintiff was specifically notified that if he was not satisfied with the BOP's determination, he was had six months after the date of the letter to file suit in the appropriate district court.  It was not until March 22, 2020, that the plaintiff filed his initial complaint in this matter.  Accordingly, even if that administrative tort claim involved negligence on the part of Mims and Bird, the statute of limitations bars his attempt to now raise a FTCA claim.  Finally, this Court notes that even with five separate civil actions, the plaintiff has not named the United States of America as a defendant in any of the civil actions.

## CONCLUSION

For the reasons stated above, the Defendants' Motion to Dismiss Plaintiff's Amended Complaint Or, in the Alternative, Motion for Summary Judgment [**Doc. 71**] is **GRANTED**.  Accordingly, the plaintiff's Amended Complaint [**Doc. 61**] is **DISMISSED**.  The plaintiff's Amended Motion for Discovery Under Rule 56(d) [**Doc. 79**] is hereby **DENIED AS MOOT**.  This Court further **DIRECTS** the Clerk to enter judgment in favor of the defendants and to **STRIKE** this case from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record.

---

[2]The pro se law clerk ("PSLC") assigned to this matter contacted the BOP regional office and was informed that the plaintiff has filed a total of ten (10) administrative tort claims during his incarceration with the BOP.  The PSLC was also provided a copy of the denial letter dated March 21, 2019, regarding Administrative Claim Number TRT-MXR-2018-02748, the only claim filed regarding USP Hazelton.  Finally, the PSLC was notified that the most recent administrative tort claim dealt with events at the Oklahoma Transfer Center and was denied on April 13, 2019.

**DATED:** January 22, 2021.


JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE